668 S.E.2d 396

Thomas Francis O'BRIEN, Jr., Petitioner,

v.

SOUTH CAROLINA ORBIT (a/k/a the South Carolina Other Retirement Benefits Investment Trust); Joleen Deames, Steffanie C. Dorn, Belinda Harper, Charlie Potts, Phillp Robey, David Vehaun, and David N. Williams, in their capacities as individual trustees; the City of Charleston; and the Municipal Association of South Carolina, Respondents.

No. 26533.

Supreme Court of South Carolina.

Heard Feb. 5, 2008.

Decided Aug. 18, 2008.

Nancy Bloodgood, Stephen L. Brown, and Russell G. Hines, of Charleston, for Petitioner.

R. David Profitt, of Haynsworth, Sinkler, Boyd; and Belton Townsend Zeigler, of Pope Zeigler, both of Columbia, for Respondents.

## JUDGMENT FOR PETITIONER

Justice BEATTY.

In this declaratory judgment action filed in this Court's original jurisdiction, Thomas O'Brien asks the Court to declare whether the City of Charleston's ("the City") decision to place funds for employee retirement benefits in a trust that invests in equity securities violates the South Carolina Constitution.[1] The City's actions are laudable and well intended. However, the City's well-intended actions do not obviate the requirement to comply with constitutional mandates. Article X, § 11 of the South Carolina Constitution specifically limits how government funds may be invested. The use of a trust to circumvent the constitutional mandate is unavailing. Accordingly, we grant O'Brien's request for a declaratory judgment and hold the City may not invest in the ORBIT trust.

## FACTUAL/PROCEDURAL BACKGROUND

The City provides its employees with retirement pay and other post-employment benefits (OPEBs) such as medical insurance, dental insurance, vision insurance, life insurance, disability insurance, long-term care insurance, and prescrip-

---

1. O'Brien also asks the Court to determine whether the City's actions constituted an *ultra vires* act or violated public policy. Because we find the City's actions were unconstitutional, we need not reach these issues.

tion drug benefits. The City provided the OPEBs on a pay-as-you-go basis by budgeting the cost of the OPEBs for retirees each fiscal year. Because OPEBs were paid each year as necessary, accounting statements reflected only actual payments made and did not indicate how much the future liability would be to fund OPEBs for all current and future retirees.

In 2004, the Governmental Accounting Standards Board issued Statement 45 (GASB 45), establishing new rules for how liabilities for OPEBs should be reported.[2] Pursuant to GASB 45, government employers would have to note on their accounting statements how much it would cost to fully fund current and future OPEBs costs. This cost could be noted as "unfunded liabilities" for the future costs, but the cost could only be amortized over a thirty-year time period. Thus, governmental entities were also required by GASB 45 to make annual required contributions of an amount equal to the present value of future OPEBs expenses related to the employees' services in the current fiscal year and an amount sufficient to amortize the unfunded actuarial accrued liability over a period up to thirty years. Actuaries have computed the City's unfunded OPEBs liability to be $32 million as of fiscal year 2007, with an annual required contribution for 2007 of $3.4 million.[3]

GASB 45 allows a governmental entity to pay its annual required contribution into an irrevocable trust established to earn a return sufficient to meet all current and future OPEBs obligations. However, GASB 45 does not establish what kind of investments in which the trust must invest. In connection with this case, John Garrett, a member of the American Academy of Actuaries, reviewed types of trusts to determine the rate of return. Garrett opined that a trust investing only in governmental debt funds would yield a 4.5 percentage annual rate of return, while a trust investing in equity securi-

---

**2.** GASB 45 must be implemented on a rolling three-year schedule based on the size of the governmental entity's revenues. Governments, such as the City, with revenues in excess of $100 million must implement GASB 45 by the end of their fiscal year beginning after December 2006.

**3.** The funding required to comply with GASB 45 is enormous. Respondents allege the combined OPEBs liability for the State and school district employees on June 30, 2006, was estimated to be $9.2 billion.

ties would yield 7.5 percentage annual rate of return. Thus, investing in equity securities would require a smaller annual contribution to fully fund the OPEBs.

The Municipal Association of South Carolina established the South Carolina Other Retirement Benefits Investment Trust (referred to as "ORBIT" or the "trust"), to receive funds from municipalities, to invest those funds in a way seeking the highest rate of return, and to disburse those funds in order to defray the future expenses of OPEBs. It is undisputed that the primary purpose of the trust is to provide the municipalities with a vehicle to facilitate investing in the stock market. The parties have stipulated that ORBIT is a creature of South Carolina trust law and is not organized as a corporation, limited liability company, or partnership. The parties also stipulate that ORBIT was not organized under the statutes governing the creation or operation of a political subdivision.

Participating employers contribute funds to the trust, and the Board of Trustees of the trust, made up of seven elected or appointed members from the various participating municipalities, holds legal title to the trust assets. ORBIT is an irrevocable trust, protected from creditors of participating employers, and the Board of Trustees has the authority to invest the funds in a variety of investments, including **publicly traded stocks and securities,** stock and bond mutual funds, derivative funds, government and corporate bonds, United States Treasury notes and bonds, and certificates of deposit. Participating employers may not recover any assets paid into the trust, and the funds paid in are maintained for OPEBs even if the employer decides to no longer participate in the trust, unless the employer decides to no longer provide OPEBs.

In order to comply with GASB 45 and to fully fund its OPEBs liability, the City passed a resolution deciding to be the first municipality to invest in ORBIT in June 2007. Although GASB 45 does not require that investment trusts contain equity securities, the City indicated to ORBIT that it would invest in the trust *only* on the condition that the investment portfolio include equity securities. The City expected to make payments to the trust from public funds, and the City set its millage rates and other taxes and fees for 2007

at levels expected to be sufficient to fund these payments into the trust. On August 14, 2007, Thomas O'Brien, a twenty-nine-year City employee and future recipient of offered OPEBs, filed the declaratory judgment action against ORBIT, its Board members, the City, and the Municipal Association (collectively, Respondents) in this Court's original jurisdiction, seeking a declaration that the City's participation in ORBIT was unconstitutional, violated statutory law, was an *ultra vires* act, and violated public policy. The Court granted O'Brien's request for review pursuant to its original jurisdiction.

## DISCUSSION

O'Brien argues that the City's actions violate Article X, § 11 of the State Constitution. We agree.

Article X, § 11 of the South Carolina Constitution provides: The credit of neither the State nor any of its political subdivisions shall be pledged or loaned for the benefit of any individual, company, association, corporation, or any religious or other private education institution except as permitted by Section 3, Article XI of this Constitution [providing for the establishment of free public schools]. Neither the State nor any of its political subdivisions shall become joint owner of or stockholder in any company, association, or corporation.

S.C. Const. art. X, § 11. The section specifically provides for investment in equity securities in only two instances. First, it provides that "endowment funds donated specifically to state-supported institutions of higher learning and held by the State Treasurer may be invested and reinvested in equity securities." *Id.* The section goes on to allow municipalities, counties, or special purpose districts that provide firefighting services to invest and reinvest firefighter pension funds in equity securities. *Id.* Nothing in this section provides the authority for municipalities to invest funds intended for OPEBs in equity securities. A recent amendment allows "the funds of the various state-operated retirement systems" to be invested and reinvested in equity securities. S.C. Const. art. X, § 16. The amendment does not indicate it also applied to the investment of funds from municipality-operated retirement systems in equity securities.

A clear reading of Article X holds that a municipality cannot invest in equity securities. The main section generally bars investments in securities with the exception of higher education and firefighter pensions. A constitutional amendment was required to allow the State to invest state retirement system funds in equity securities. If merely contributing the funds to a trust that then invested in equity securities would have allowed the State to avoid the prohibitions of Article X, the constitutional amendment would have been unnecessary. Further, allowing the City to invest in equity securities through a trust violates the intent of Article X: to protect public funds from risky investments.[4]

 It is troubling that the City attempted to avoid the constitutional prohibition on investing in equity securities, thereby using government funds to jointly own a company with other investors, by merely setting up a trust.[5] Although ORBIT is set up as a trust, it functions as an investment manager for the City and, as such, is no different than any other investment house (Merrill Lynch, Oppenheimer, etc.). The veneer of a trust does not change that. More importantly, the status of ORBIT as a trust is irrelevant. Article X, § 11 concerns the *investing* of government funds. The investment takes place when the City transfers money to the trust to be used for the expressed purchase of equity securities. It is abundantly clear from the record that the City's investment in ORBIT is for the expressed purpose of circumventing the constitution. The City's investments violated the constitutional prohibition.

The investment power of the City, and other members of ORBIT, is limited by statute as well. Specifically, S.C.Code

---

4. As pointed out by Respondents, constitutional provisions such as Article X were adopted by many states in the late 1800s in response to the loss of public funds invested in risky railroads. A modern comparison would be the current debacle with sub-prime lending. Thus, the intent of the section is to protect public funds from fraudulent and speculative investments.

5. The City argues that it is merely a settlor of the trust and has no ownership interest in it. This argument is unpersuasive. Interestingly, the trust agreement requires that any benefits payable pursuant to the trust are made to the member, i.e. the City, unless the member directs otherwise.

Ann. § 5–7–30 (2004) ("Each municipality of the State, in addition to the powers conferred to its specific form of government, may enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State. . . ."); S.C.Code Ann. § 6–5–10 (Supp.2007) (providing that political subdivisions are authorized to invest money subject to their control in: (1) obligations of the United States; (2) obligations issued by the Federal Financing Bank; (3) general obligations of the State of South Carolina or any of its political subdivisions; (4) insured savings and loan associations; (5) collaterally secured certificates of deposit; (6) repurchase agreements when collateralized by securities; (7) no load open-end or closed-end management type investment companies or investment trusts if the portfolio is limited to obligations of the United States, Federal Financing Bank, State of South Carolina, or repurchase agreements; and (8) no more than forty percent of funds generated by hospitals in notes, bonds, guaranteed investment contracts, debentures, or other contracts issued by a bank where a political subdivision receives Medicaid funds appropriated by the General Assembly); S.C.Code Ann. § 6–6–30 (2004) (providing that the Treasurer may sell to all political subdivisions participation units in the South Carolina Pooled Investment Fund); S.C.Code Ann. § 11–1–60 (1986) (providing the State or political subdivisions may invest funds in its custody in shares of federal savings and loan associations when the shares are insured by the federal Savings and Loan Insurance Corporation, and also in bonds or debentures issued by any federal home loan bank); S.C.Code Ann. § 11–1–70 (1986 & Supp.2007) (noting that public agencies may invest pension funds in obligations issued or unconditionally guaranteed by the International Bank and the obligations shall be eligible as deposits of collateral, as security for the deposit of public funds, and for all other types of deposits made with any public agency).

While the specific mention of particular powers should not be construed as limiting the general powers of a municipality, the specific statutes regarding authorized investments by political subdivisions expresses a clear legislative intent to create an exhaustive list of authorized investments. Section 6–5–10(a)(7) is particularly enlightening. It provides that a political subdivision may place public funds in "no load open-end or

closed-end ... investment trusts ... if the portfolio of the trust" is limited to obligations of the United States, obligations of the Federal Financing Bank, obligations of the State of South Carolina, or purchase agreements collateralized by securities. S.C.Code Ann. § 6–5–10(a)(7) (Supp.2007). Thus, in addition to outlining the types of investments political subdivisions may make, the Legislature limited the portfolio of certain *trusts* to the same types of investments. The Legislature's limitation on authorized investments does not provide for investing in equity securities or in trusts that then invest in equity securities.

Respondents, however, urge a different interpretation of the statutes and argue the cited statutes place limitations only on the investment of municipal money "subject to the control and jurisdiction" and "under the custody" of the political subdivision. Thus, respondents argue, the statutory restrictions, on their face, do not apply to private trusts and do not apply to the investment in equity securities by ORBIT because those funds are no longer under the custody of or subject to the control of the City. Respondents correctly cite the statutory requirements that the money be subject to the political subdivision's control and that the specific statutes do not apply to private trusts. This argument is unavailing, however, because the statutes do not specify that a municipality may invest in a private investment trust in the first place where the trust includes equity securities in its portfolio.

Further, it is our view that the particular trust the City has invested in is an illegal trust. To constitute a valid trust, the trust must seek a valid, legal purpose. 90 C.J.S. *Trusts* § 22 (2008) ("A trust may be created for any purpose that is not illegal. In the absence of a statute to the contrary, a settlor may create a trust for any lawful purpose ..."). S.C.Code Ann. § 62–7–404 states that a trust must be created *only* to the extent its purposes are *lawful* and possible to achieve. Because the obvious purpose of ORBIT is to invest in equity securities and attempt to circumvent the constitutional prohibition on investing in equity securities, it had an illegal purpose. Absent the status of a trust, ORBIT is merely an association of government officials and or employees who invest government funds. As such Article X, § 11 clearly applies to them. Thus, we find ORBIT should be

dissolved with the money paid into the trust returned to the members.

## CONCLUSION

While investing in a private, irrevocable investment trust is permitted to satisfy GASB 45 and would be a way for governmental entities to use public funds to earn a good rate of return, the requirements of GASB 45 cannot override the requirements of our constitution. Because it is unconstitutional for the City to invest in equity securities, it is likewise unconstitutional for the City to invest in a trust that then invests in equity securities. Accordingly, we declare the City's investment in ORBIT unconstitutional, order ORBIT dissolved, and require the return of funds invested to the members.

**DECLARED UNCONSTITUTIONAL.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I agree that municipalities may not invest in the ORBIT trust, but write separately because I base my decision upon the absence of any statutory authority permitting a political subdivision to invest funds in such a trust. *See* S.C.Code Ann. § 6–5–10 (Supp.2007) ("Authorized investments by political subdivisions"); *see also* §§ 6–6–30, 11–1–60, and 11–1–70. I disagree with the majority's characterization of ORBIT's status as a trust as a "veneer," its characterization of a trust settlor as an owner, and its suggestion that the trust "is no different than any other investment house. . . ." Moreover, I do not agree that we should order that the trust be dissolved as in my view there is no flaw inherent in the trust itself, rather the problem lies in the inability of municipalities to participate in it. In a similar vein, the funds in the trust should be distributed as provided in the trust instruments, not returned to "the members."